## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

IN RE H&R BLOCK MORTGAGE  )
CORPORATION, PRESCREENING  ) CAUSE NO. 2:06-md-230
LITIGATION        ) (MDL 1767)
               )(relates to all cases)


## OPINION AND ORDER

This matter is before the Court in this multidistrict litigation on three motions for class certification, filed by Plaintiffs in each of the three proceedings which have been consolidated for pretrial proceedings: (1) Plaintiff Perrie Bonner's Motion for Class Certification, filed by Plaintiff, Perrie Bonner, on July 2, 2007 [docket #56](relating to *Perrie Bonner v. H&R Block Mortgage Corp.*, N.D. Indiana, C.A. No. 2:05-cv-162); (2) Plaintiff Pamela J. Phillips' Motion for Class Certification, filed by Plaintiff, Pamela J. Phillips, on July 2, 2007 [docket #58](relating to *Pamela Phillips v. H&R Block, Inc., et al.*, C.D. California, C.A. No. 8:05-cv-851, our case number 2:06-cv-231); and (3) Plaintiff Eugene Wojtczak's Motion for Class Certification, filed by Plaintiff, Eugene Wojtczak, on July 2, 2007 [docket #63] (relating to *Eugene Wojtczak v. H&R Block Mortgage Corp.*, E.D. Wisconsin, C.A. No. 2:05-cv-851, our case number 2:06-cv-232). For the reasons set forth below, all three Motions for Class Certification are **GRANTED**. Accordingly, **THE FOLLOWING CLASSES ARE**

**CERTIFIED:**

> In *Perrie Bonner*, 2:05-cv-162: (a) all persons with an address located in the geographic jurisdiction of the Northern District of Indiana (b) to whom Defendant sent or caused to be sent material in the form represented by Exhibit A to the Complaint, (c) on or after April 29, 2003 and before May 19, 2005, and (d) who did not obtain credit in response to the material.  A response to the mailer is not a prerequisite for class membership.

> In *Pamela Phillips*, 2:06-cv-231: All individuals in Harris County, Texas whose consumer reports were obtained or used by HRBMC in connection with a credit transaction initiated by them and to whom HRBMC sent or caused to be sent a solicitation in the form represented by Exhibit "A" to the complaint, during the longest period allowable by 15 U.S.C. § 1681p.  Excluded from the Class are employees, officers, and directors of HRBMC or its subsidiaries, its successors, or affiliates.

> In *Eugene Wojtczak*, 2:06-cv-232:  All persons with a Wisconsin address to whom Defendant sent Exhibit A since November 20, 2004.

Additionally, the parties are **ORDERED** to meet and confer regarding the preparation of a notice to the members of the classes and are directed to submit an agreed proposed notice (or separate proposals if they cannot reach agreement, supported by appropriate citations to case law) to chambers by no later than **August 28, 2007.**

BACKGROUND

Each of the Plaintiffs in this consolidated proceeding seek class certification of their Fair Credit Reporting Act claims

("FCRA"), 15 U.S.C. section 1681 *et seq.*, against the Defendant, H&R Block Mortgage Corporation ("HRBMC"). Plaintiffs received a credit solicitation mailing from HRBMC informing them they had been pre-approved for a mortgage loan. On behalf of themselves and the three classes of individuals who received the same mailings, Plaintiffs claim HRBMC accessed their consumer reports without their consent and in willful violation of the FCRA. Plaintiffs allege that HRBMC used information contained in pre-qualifying reports received from a credit reporting agency to send offers of credit, in the form of Exhibit A to the complaints, to consumers. Specifically, Plaintiffs claim that HRBMC's mailings did not constitute a "firm offer of credit" within the meaning of 15 U.S.C. § 1681 b(c)(1)(B)(i), and that HRBMC's access to their credit reports therefore violates the FCRA. Plaintiffs seek statutory damages on behalf of themselves and the classes pursuant to § 1681n of not less than $100 and not more than $1,000 for each violation by HRBMC.

All three Plaintiffs have moved to certify a class of similarly situated plaintiffs pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). Bonner asks to certify a class of: (a) all persons with an address located in the geographic jurisdiction of the Northern District of Indiana (b) to whom Defendant sent or caused to be sent material in the form represented by Exhibit A to the Complaint, (c) on or after April

29, 2003 and before May 19, 2005, and (d) who did not obtain credit in response to the material.  Phillips requests a class of: all individuals in Harris County, Texas whose consumer reports were obtained or used by HRBMC in connection with a credit transaction initiated by them and to whom HRBMC sent or caused to be sent a solicitation in the form represented by Exhibit "A" to the complaint, during the longest period allowable by 15 U.S.C. § 1681p.  And Wojtczak asks for a class of: all persons with a Wisconsin address to whom Defendant sent Exhibit A since November 20, 2004.  Although each Plaintiff has submitted individual motions for class certification and memoranda in support, HRBMC filed a combined opposition to Plaintiffs' motions for class certification, and Plaintiffs then filed a consolidated reply in support of motion for class certification.  Because the arguments and issues are identical, this Court has chosen to rule on all three of the motions for class certification in one consolidated order.

HRBMC opposes the class certifications on two bases.  First, HRBMC argues that Plaintiffs have failed to satisfy Rule 23(b)(3) because a class action is not a "superior" means of adjudication in this matter.  Specifically, it argues that the potential liability HRBMC faces with the large classes could put HRBMC out of business.  Second, HRBMC argues that Plaintiffs have failed to satisfy Rule 23(b)(3) because individual questions pertaining to whether HRBMC's offer was a "firm offer of credit" predominate over questions of

4

law and fact common to the putative class.   Having been fully briefed, these motions are ripe for adjudication.


### Motion to Certify Class

The standards for class certification are well grounded and set forth in Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs must establish that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, the plaintiff must establish at least one prong of Rule 23(b).  In this case, the third prong is relevant, which provides that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  With these principles in mind, the Court can address the appropriateness of the class actions in this consolidated multidistrict case.


### Numerosity

As set forth above, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Where

the membership of a proposed class is at least forty, this Circuit has found joinder to be impracticable and the numerosity requirement to be met. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Matz v. Household Int'l Tax Reduction Inv. Plan*, 232 F.R.D. 593, 600 (N.D. Ill. 2005). In this case, according to HRBMC, Plaintiffs have identified classes of 12,634 members in *Phillips*, over 49,000 in *Wojtczak*, and 125,773 in *Bonner*. HRBMC does not dispute that numerosity exists. Therefore, Plaintiffs have satisfied the numerosity requirement.

<u>Commonality</u>

Rule 23(a)(2) requires Plaintiffs to show that there are common questions of law or fact among the proposed class members. "Commonality generally exists when the defendant has engaged in 'standardized conduct' towards members of the proposed class." *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2006 WL 862886, at *2 (N.D. Ill. Mar. 30, 2006) (quotation omitted). Additionally, "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Here, the common nucleus of operative fact is that HRBMC allegedly obtained or used consumer report information for the purpose of sending Plaintiffs and all class members the solicitations attached to each complaint as Exhibit A. Moreover, the common question of law is whether the

mailings complied with the "firm offer of credit" exception to the general rule in the FCRA that it is not permissible to obtain consumer reports unless the consumer gives permission.[1]  HRBMC does not dispute that commonality exists, and the Court finds that Plaintiffs have established commonality.


<u>Typicality</u>

Rule 23(a)(3) demands that the claims of Plaintiffs be typical of the class claims.  "The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality." *Rosario*, 963 F.2d at 1018.  A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).  Defendant does not contest that the proposed class has been subjected to the same practice as the named Plaintiffs - that their credit was allegedly accessed without authorization and that they were mailed a credit solicitation.  Therefore, the Court finds the requirement of typicality is met.

---

[1] The FCRA places restrictions on the use of certain consumer data.  However, it specifically allows parties to access data from credit reports for certain enumerated "permissible purposes."  15 U.S.C. § 1681b.  One permissible purpose is when "the transaction consists of a firm offer of credit or insurance."  15 U.S.C. § 1681b(c)(1)(B)(i).

Adequacy of Representation

Rule 23(a)(4) requires that Plaintiffs will fairly and adequately protect the interests of the class. This determination has two facets. First, Plaintiffs must not have interests antagonistic to the class. *Rosario*, 963 F.2d at 1018. Second, Plaintiffs' counsel must be qualified, experienced, and able to effectively conduct the litigation. *Rogers v. Baxter Int'l, Inc.*, No. 04 C 6476, 2006 WL 794734, at *5 (N.D. Ill. Mar. 22, 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)). Defendant does not contest that the interests of the named Plaintiffs (Bonner, Phillips, and Wojtczak), are in alignment with the interests of the class nor does it dispute that the named Plaintiffs will vigorously pursue the class interests as well as their own. Additionally, HRBMC does not dispute that Plaintiffs and the classes are represented by experienced counsel. Having reviewed the declarations of experience filed by counsel in the various cases, this Court is satisfied that Plaintiffs are being represented by qualified counsel who are experienced in complex litigation and the prosecution of class actions.

Rule 23(b)(3)

Plaintiffs have established the prerequisites under Rule

23(a); therefore, the Court now considers Rule 23(b).  In this case, the Court must determine whether the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### Superior Vehicle

First, HRBMC argues that a class action is not the superior vehicle to litigate Plaintiffs' claims.  According to HRBMC's calculations, if the classes are certified, HRBMC faces statutory damages of nearly $19 million even at the minimum jury award of $100 per class member (and over $187 million in potential liability if the maximum $1,000 is awarded for each violation).  Such a verdict, argues HRBMC, would likely annihilate the company.

"Where a transferee court presides over [a] diversity action [] . . . under the multidistrict rules," the governing law comes from the "jurisdiction in which the transferred" case originated. *In re Air Disaster*, 81 F.3d 570, 576 (5th Cir. 1996).  Recall that *Bonner* was filed in the Northern District of Indiana and *Wojtczak* was filed in the Eastern District of Wisconsin; therefore, Seventh Circuit law is controlling for these two cases.

HRBMC's superiority argument was squarely addressed and rejected in an analogous purported class action asserting FCRA

violations, in which the Seventh Circuit reversed the district court's denial of class certification. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).  In *GMAC Mortgage*, the district judge found that "[i]f Murray and the proposed class members were to prevail at trial, GMAC would face a potential liability in the billions of dollars for purely technical violations of the FCRA . . . Rule 23 is not intended to encourage such abuse of the class action mechanism." *Id.* at 953.  However, the Seventh Circuit rejected this contention that the class should not be certified because the defendant could face huge financial losses even though the class members suffered little or no actual harm, explaining that:

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A), combined with [the defendant's] decision to obtain the credit scores . . . Many laws that authorize statutory damages also limit the aggregate award to any class. . . . Other laws, however, lack such upper bounds . . . . The Fair Credit Report Act is in the cap-free group. [I]t is inappropriate to use procedural devices to undermine laws of which a judge disapproves. Maybe suits such as this will lead Congress to amend the Fair Credit Report Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently – so that constitutional bounds are not tested, because the statute cannot be enforced by more than a

handful of victims – has little to recommend it. *GMAC Mortgage Corp.*, 434 F.3d at 953-54 (citations omitted).  These principles enunciated by the Seventh Circuit hold true in this case, and the Seventh Circuit's decision is binding.  *See also Shellman v. Countrywide Home Loans, Inc.*, No. 1:05-cv-234-TS, 2007 WL 1100795, at *4-5 (N.D. Ind. Apr. 12, 2007) (relying upon *GMAC Mortgage* in rejecting a similar claim that class certification would open the defendant to enormous liability in a FCRA case); *Bruce v. Keybank Nat'l Ass'n*, No. 2:05-cv-330, 2006 WL 2334846, at *3 (N.D. Ind. Aug. 7, 2006) (relying upon *GMAC Mortgage* in certifying a class in an analogous FCRA suit, and rejecting the argument that a class action is not a superior means of adjudication because the defendant faced potential statutory damages of hundreds of millions of dollars).  HRBMC's argument that a jury award would render it bankrupt is premature, and does not preclude class certification for the *Bonner* or *Wojtczak* cases.

As to the *Phillips* case, because it was filed in the Central District of California, the governing law for that case stems from that jurisdiction.  HRBMC argues that three slip opinions decided in the Central District of California are on point.  *See Narajian v. Charlotte Russe, Inc.*, No. 07-cv-00501, slip op. (C.D. Cal. June 12, 2007); *Narajian v. Avis Rent A Car System*, No. 07-cv-588, slip op. (C.D. Cal. June 11, 2007); and *Soualian v. International Coffee and Tea, LLC*, No. 007-cv-502, slip op. (C.D. Cal. June 11, 2007).

These cases are all factually distinguishable from the present situation.   All three of these cases involved plaintiffs' allegation that defendants willfully violated 15 U.S.C. § 1681c(g), a provision of the Fair and Accurate Credit Transactions Act ("FACTA") providing that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction," by printing such prohibited information on receipts issued to thousands of customers.   The cases did not involve the "firm offer" claims raised in this action.   In deciding these cases, the California district court denied certification based in part on findings that individual actions were viable, the defendants had inadvertently committed the FACTA violations, and defendants acted promptly and in good faith to bring themselves into compliance upon learning about the error.   Moreover, one of these cases, *Soualian*, specifically distinguished itself from another California district court decision, *White v. E-Loan, Inc*., No. C05-02080SI, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006), which granted class certification in a FCRA "firm offer" action, noting that the *White* court adopted the reasoning of *GMAC Mortgage* and granted certification in part because the plaintiff alleged more than a mere technical violation.   *Soulian* slip op. at 4 n.8.   In contrast, a FACTA violation is a mere technical violation.   *Id.*

12

Much more on point than HRBMC's trilogy of cases are the slip opinions cited by Plaintiffs, which involve the same claims under the FCRA. *See Holloway v. Full Spectrum Lending*, SACV 06-5975 DOC, slip op. (C.D. Cal. June 26, 2007), and *Phillips v. Accredited Home Lenders Holding Co.*, No. SACV 06-57 CJC, slip op. (C.D. Cal. May 15, 2007). In *Full Spectrum* and *Phillips*, the defendants objected to class certification on the basis of superiority, arguing that the potential statutory damages could be enormous. In both cases, the court rejected these arguments, citing the reasoning in *GMAC Mortgage*. *See Full Spectrum*, slip op. at 14-16; *Accredited*, slip op. at 12-13. The court reasoned in *Full Spectrum* that:

> Nothing compelled [defendant] to obtain consumer credit reports before mailing its solicitations or to target consumers on prescreening lists. Thus, [defendant's] own actions dictated the range of potential statutory damages in this case. When [defendant] decided to seek the credit reports of 731,000 Florida residents, it was aware of its obligations under the FCRA and its potential liability of $100 to $1,000 per violation if its solicitations were not firm offers of credit.

*Full Spectrum*, slip op. at 16. Similarly, HRBMC decided to send the solicitations at issue in this case to residents in the Northern District of Indiana, Harris County, Texas, and Wisconsin. The decision to send these prescreened solicitations to large numbers of consumers was a conscious decision rather than a mere technical violation. As stated by the court in *In re Farmers Ins. Co.*, "[i]n the court's view, a class action is the best way to resolve the claims of the purported class particularly where, as

13

here, defendants have engaged in standardized conduct affecting
numerous consumers . . . and a consumer's potential recovery [under
the FCRA] is most likely too small to justify . . . individual
action." *In re Farmers Ins. Co., Inc.*, No. CIV-03-158-F, MDL 1564,
2006 WL 1042450, at *11 (W.D. Okla. Apr. 13, 2006).  The Court
therefore finds that the class action is the superior means of
adjudication of these claims.

<u>Individual Issues of Fact and Law</u>

HRBMC argues that even if superiority is established,
certification should be denied because individual issues of fact
and law predominate.  *See* Fed. R. Civ. P. 23(b)(3).  HRBMC
essentially claims that whether the mailing constituted a "firm
offer of credit" cannot be determined without an individualized
examination of each class member's financial circumstance.
However, defendant GMAC raised the identical argument in opposition
to class certification in *GMAC Mortgage*, and it was explicitly
rejected by the Seventh Circuit:

> We do not read *Cole*, however, to require a
> consumer-by-consumer evaluation.  An offer has
> value to 'the consumer' if it is useful to the
> *normal* consumer.  *Cole*'s objective was to separate
> *bona fide* offers of credit from advertisements for
> products and services, determining from 'all the
> material conditions that comprise the credit
> product in question . . . [whether it] was a guise
> for solicitation rather than a legitimate credit
> product.  *Id*. at 728 (emphasis in original).  That
> depends on the terms of the offer, not on
> recipients' idiosyncratic circumstances.  How else

14

could someone in GMACM's position know whether it was lawful to obtain credit information in the first place?

In order to avoid class certification, GMACM has adopted a position that would make it impossible for any potential lender to know *ex ante* whether it is entitled to obtain credit information. Any recipient could appear, assert that the offer was worthless given his financial circumstances, and obtain damages if not an injunction. Such a rule would cripple the statutory regime by making offers of credit so risky that any prudent, law-abiding firm would have to withdraw from the business. To escape one suit, GMACM would hobble its own operations and those of all others who rely on the firm-offer proviso to the Fair Credit Reporting Act. That would disserve the interests of both lenders and consumers. Nothing in *Cole* requires an offer's value to be assessed *ex post*, and recipient by recipient.

*GMAC Mortgage*, 434 F.3d at 955-56; *see also Bruce*, 2006 WL 2334846, at *4 (rejecting the same argument that individual questions predominate over common ones, finding *GMAC Mortgage* "has instructed courts in this circuit that the issue of whether 'a firm offer of credit' has been made in situations such as this is a class issue."). As noted by the Court in *Shellman*, the Seventh Circuit "rejected the notion that the questions of whether a defendant made a firm credit of offer and what damages could have resulted require individualized assessments." *Shellman*, 2007 WL 1100795, at *5 (citations omitted); *see also Kudlicki v. Farragut Financial Corp.*, No. 05 C 2459, 2006 WL 927281, at *2-*3 (N.D. Ill. Jan. 20, 2006) (granting summary judgment on liability and finding defendant willfully failed to comply with FCRA on a class-wide basis); *see*

*also White*, 2006 WL 2411420, at *6 (California case following the Seventh Circuit's reasoning and certifying a class over defendant's assertion that "firm offer" claim presented individualized inquiry).

These firm offer cases, like the present one, are different from *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679 (N.D. Ill. Apr, 19, 2002) (cited by HRBMC), in which the court denied class certification based on individual issues. *Rodriguez* was a class action against a finance company for discrimination in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.,* 42 U.S.C. § 1981 and 42 U.S.C. § 1982. In *Rodriguez*, the court found that a trial would require an individualized inquiry into the reasons for thousands of credit decisions, because as a defense, the credit company could claim that it used individualized factors to establish that the finance charge markup was based on a legitimate consideration, such as creditworthiness, rather than race. *Id.* at *5. In contrast, in this case, the ultimate question – whether the mailings constituted a "firm offer of credit," predominates over any individual issues. Moreover, "if it turns out that any class members have unique claims, they will be given opportunity to opt out from this case." *Shellman*, 2007 WL 1100795, at *5.


CONCLUSION

16

For the reasons stated above, all three Motions for Class Certification are **GRANTED** and **THE FOLLOWING CLASSES ARE CERTIFIED**:

> In *Perrie Bonner*, 2:05-cv-162: (a) all persons with an address located in the geographic jurisdiction of the Northern District of Indiana (b) to whom Defendant sent or caused to be sent material in the form represented by Exhibit A to the Complaint, (c) on or after April 29, 2003 and before May 19, 2005, and (d) who did not obtain credit in response to the material. A response to the mailer is not a prerequisite for class membership.

> In *Pamela Phillips*, 2:06-cv-231: All individuals in Harris County, Texas whose consumer reports were obtained or used by HRBMC in connection with a credit transaction initiated by them and to whom HRBMC sent or caused to be sent a solicitation in the form represented by Exhibit "A" to the complaint, during the longest period allowable by 15 U.S.C. § 1681p.  Excluded from the Class are employees, officers, and directors of HRBMC or its subsidiaries, its successors, or affiliates.

> In *Eugene Wojtczak*, 2:06-cv-232:  All persons with a Wisconsin address to whom Defendant sent Exhibit A since November 20, 2004.

Additionally, the parties are **ORDERED** to meet and confer regarding the preparation of a notice to the members of the classes and are directed to submit an agreed proposed notice (or separate proposals if they cannot reach agreement, supported by appropriate citations to case law) to chambers by no later than **August 28, 2007.**

DATED: **August 8, 2007**                    **/s/ RUDY LOZANO, Judge**
                                             **United States District Court**